## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**GMAC REAL ESTATE, LLC**, a Delaware
Limited Liability Company,

<em>Plaintiff,</em>

v.

**WATERFRONT REALTY GROUP, INC.**,
a Florida Corporation, **JACK NEWBY**,
an individual, **RICK NEWBY**, an individual, and
**THOMAS OUVERSON**, an individual.

<em>Defendants.</em>

CASE NO.

FILED: SEPTEMBER 4, 2008
08CV5043
JUDGE GUZMAN
MAGISTRATE JUDGE ASHMAN

CEM

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff, **GMAC REAL ESTATE, LLC**, a Delaware Limited

Liability Company, ("Plaintiff"), by and through its attorneys, Fuchs & Roselli, Ltd., and for

its *Verified Complaint for Injunctive and Other Relief* ("Complaint") as against the

Defendants, **WATERFRONT REALTY GROUP, INC.**, a Corporation, **JACK NEWBY**, an

individual, **RICK NEWBY**, an individual, and **THOMAS OUVERSON**, an individual, (hereinafter

collectively referred to as "Defendants"), Plaintiff complains as follows:

### NATURE OF THE ACTION

1.     This Verified Complaint arises from Defendants' breach of a Franchise

Agreement and its continued, unauthorized and improper use of Plaintiff's registered service

Marks and logos.  Following a breach of the written Franchise Agreement by Defendants and

a termination of that agreement by Plaintiff, Defendants continue to use Plaintiff's service

marks without authorization.  Despite demand to cease, Defendants have continued to use and

misuse Plaintiff's Marks.  This Verified Complaint is brought to redress the continuing

infringement of its Marks and to recover damages resulting from Defendants' breach of the

Franchise Agreement. This Verified Complaint is brought pursuant to 15 U.S.C. §§ 1051 *et seq*.

## JURISDICTION AND VENUE

2.      Plaintiff is a Delaware Limited Liability Company with its principal place of business at 2021 Spring Road, Oak Brook, Illinois.

3.      Plaintiff is a franchisor of a real estate system for the promotion and sale of Real Property.

4.      Waterfront Realty Group, Inc., is, and was at all relevant times, a Florida Corporation, with its principal place of business at 1395 3rd Street South, Naples, FL 34102.

5.      Jack Newby is an individual, who, upon information and belief, at all relevant times is a resident of Florida.

6.      Rick Newby is an individual, who, upon information and belief, at all relevant times is a resident of Florida.

7.      Thomas Ouverson is an individual, who, upon information and belief, at all relevant times is a resident of Florida.

8.      Jurisdiction is proper under 28 U.S.C. §§1331, 1338 and 15 U.S.C. §1121.

9.      Venue is proper under 28 U.S.C. §1391(b), as substantial portion of the occurrences alleged and complained of in this Verified Complaint occurred in this district.

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 8 as though fully set forth herein.

9.      Plaintiff is a widely known franchisor of a distinctive real estate system for the promotion and sale of Real Property.

10.    Plaintiff's service Marks and logos appear on the principal register of the United States Patent and Trademark Office.  Plaintiff has the exclusive right to use and license its service marks and the derivatives thereof, as well as the distinctive real estate system for the promotion and sale of real property to the public under Plaintiff's name. Plaintiff and its predecessors have continuously used each of its service marks since their date of registration, and Plaintiff has the exclusive right to use and sublicense its service marks in the United States, including the right to sue for infringement.

11.    Plaintiff has invested and continues to invest substantial time, money and effort to develop goodwill in its trade name and trade marks and to make its name and marks recognizable as a distinct designation of services provided by Plaintiff.

12.    Registration of Plaintiff's service marks are in full force and effect, unrevoked and uncancelled pursuant to 15 U.S.C. §1065.  Plaintiff has given notice to the public of the registration of its service marks as provided in 15 U.S.C. §1111.

13.    Plaintiff uses or has used the words "GMAC Real Estate", "GMAC Home Services", "Premiere Service" and others as variations of its brand name.

14.    Through its franchise system, Plaintiff markets, promotes and provides service to its franchisees throughout the United States.  To identify the origin of the services it provides, Plaintiff allows its franchisees to use its service marks and to promote the GMAC Real Estate name.

15.    The value of the goodwill developed in Plaintiff's service marks cannot be determined by a precise monetary calculation, because Plaintiff is a national real estate service franchise and a widely known provider of such service, the value of its goodwill is substantial.

16.     Plaintiff's service marks are famous in the United States.

17.     On or about January 1, 2001, Plaintiff entered into a Real Estate Franchise Agreement with Waterfront Realty Group, Inc.  A true copy of this Agreement is attached as Exhibit 1).

18.     Jack Newby, Rick Newby, Thomas Ouverson and Waterfront Realty Group were identified as the owners of Waterfront Realty Group, Inc.  (Exhibit 1, §16(b)).

19.     Pursuant to the Franchise Agreement, Waterfront Realty Group, Inc., was permitted to use Plaintiff's marks in association with a permanent real estate sales office as approved by Plaintiff and in a form and style authorized by Plaintiff. (Exhibit 1, § 3(B)).

20.     Pursuant to the Franchise Agreement, Waterfront Realty Group, Inc., agreed to pay Plaintiff certain Referral, Transaction and Advertising Fees. (Exhibit 1 §10).  Waterfront Realty Group, Inc., also agreed to submit monthly financing reports to Plaintiff as outlined in Section 11 of the Franchise Agreement. (Exhibit 1 §11).

21.     Pursuant to the Franchise Agreement, Plaintiff could terminate the Franchise Agreement in the event of default, effective upon written notice of termination, provided Plaintiff served Waterfront Realty Group, Inc., with a written notice of default and allowing Waterfront Realty Group, Inc., 30 days to cure the default. (Exhibit 1 §17(c)).

22.     Plaintiff provided Waterfront Realty Group, Inc., with Notice of Default on or about March 23, 2005.  (Exhibit 2).

23.     Despite Waterfront Realty Group, Inc.'s, clear default of its obligations under the Franchise Agreement and Notice of Default, Defendants failed and refused to cure their default.

24.    As a result of Waterfront Realty Group, Inc.'s, continued default under the Franchise Agreement Plaintiff terminated the Agreement on or about October 5, 2005. (Exhibit 3).

25.    Plaintiff provided Waterfront Realty Group, Inc., Notice of Termination, at that same time.   (Exhibit 3).

26.    At the time the franchise agreement was terminated, Defendants owed $316,266.34, in unpaid franchise fees and anticipated lost revenues.

27.    The Franchise Agreement provides that upon termination of the Agreement, Defendant shall:

> "discontinue use of all Marks and the words 'GMAC Real Estate', and not hold itself in any manner that would give the public the impression it is still a licensee of GMAC Real Estate …"

(Exhibit 1 §18).

28.    The Franchise Agreement further provides that in the event of termination, Defendant shall:

> "Surrender to GMAC Real Estate, or its authorized representative all signs including yard signs, letterheads, advertising, materials, business cards, and the like bearing the Marks, and return to GMAC Real Estate all manuals, training materials, client promotion materials, and the like bearing the Marks. Members agree that GMAC Real Estate shall have the right to secure am order enjoining Member from any use of materials or programs which are part of the Service."

(Exhibit 1 §18(c)).

29.    The Endorsement of Principals/Shareholders provides that:

> "Each of the principals or shareholders identified by Section 16.b hereby executes this Contract for the limited purpose of being personally bound by the provisions of Section 3(The Marks), 4 (Materials), 8 (No Conflicting License) and 16 (assignment and Ownership) of the Contract."

(Exhibit 1 at p.18).

30.     Section 18 of the Franchise Agreement provides that:

"If after termination, …Member shall fail or refuse to comply with any of the requirements of this Section, Member shall reimburse GMAC Real Estate in connection with any legal action taken to enforce compliance, including reasonable collection agency and attorney fees and court costs."

(Exhibit 1 §18).

31.     Despite the termination of the Franchise Agreement and receiving notice of that termination, Defendants have continued to misuse Plaintiff's service marks to induce the public to use their real estate services for the promotion and sale of real property.

32.     Despite the termination of the Franchise Agreement and receiving notice of that termination, Defendants have continued to hold themselves out to the public as a franchisee in good standing or other affiliate of Plaintiff to induce the public to use their real estate services for the promotion and sale of real property.

33.     Plaintiff has made and continues to make all reasonable effort to obtain relief directly from Defendants for their continuing infringements of their marks, but without success.

34.     Plaintiff has met all of its obligations under the Franchise Agreement.

## COUNT I – VIOLATION OF SECTION 32 OF LANHAM ACT

35.     Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 35 above as though fully set forth herein.

36.     Section 32 of the Lanham Act provides that:

"[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant"

(15 U.S.C. §1114(1)(a).

37.     Defendants have marketed and promoted their real estate services and continue to market and promote their real estate services through the unauthorized use of Plaintiff's marks.  Such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers in violation of Section 32 of the Lanham Act.  Defendants' actions therefore infringe upon the exclusive rights granted Plaintiff by its federal service mark registration in violation of 15 U.S.C. §1114.

38.     Defendants have committed this infringement with full knowledge and awareness of Plaintiff's registration of its marks and with the intent to cause confusion, mistake, and deception of the consuming public.

39.     As a direct and proximate result of Defendants' infringement upon Plaintiff's Marks, Plaintiff has suffered and continues to suffer irreparable injury to its business, including, but not limited to loss of sales, profits, business reputation, goodwill, and the likelihood that the distinctive quality of its Marks will be diluted, the losses of which are impossible to calculate.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its service marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with

Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT II – VIOLATION OF SECTION 43(a) OF LANHAM ACT

40.     Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 39 above as though fully set forth herein.

41.     Section 43(a) of the Lanham Act provides that:

> "[a]ny person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol … or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation … or as t the origin, sponsorship, or approval of … goods [or]services … shall be liable in a civil action"

(15 U.S.C. §1125(a).

42.     The acts of the Defendant in marketing and promoting its real estate services through the use of Plaintiff's marks constitute a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact, which have

caused and are likely to continue to cause confusion, mistake or deception as to the affiliation of Defendants with Plaintiff, or to confusion, mistake or deception to imply or suggest that Plaintiff sponsors, approves or is in any way affiliated with the services Defendants provide, all in violation of Section 43(a) of the Lanham Act.

43.    Defendants' acts of infringement in violation of Section 43(a) were committed with full knowledge and awareness of Plaintiff's registration of its Marks.  Defendants' acts of infringement were undertaken and continued with the intent to cause confusion, mistake or deception upon the consuming public.  Defendants' commission of such acts with knowledge and awareness of Plaintiff's rights constitutes a willful violation of Section 43(a) of the Lanham Act.

44.    As a direct and proximate result of Defendants' infringement upon Plaintiff's Marks, Plaintiff has suffered and continues to suffer irreparable injury to its business, including, but not limited to loss of sales, profits, business reputation, goodwill, and the likelihood that the distinctive quality of its Marks will be diluted, the losses of which are impossible to calculate.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT III – VIOLATION OF SECTION 43(c) OF LANHAM ACT

45.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 44 above as though fully set forth herein.

46.    Section 43(c) of the Lanham Act provides that:

> "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as provided in this subsection."

(15 U.S.C. §1125(c).

47.    The acts of the Defendant in marketing and promoting its real estate services through the use of Plaintiff's Marks have caused and will continue to cause dilution and disparagement of the distinctive quality of Plaintiff's Marks and have lessened and will continue to lessen the capacity of Plaintiff's Marks to identify and distinguish the services it

provides, in violation of Section 43(c) of the Lanham Act.

48.    Defendants' ongoing acts of infringement in violation of Section 43(c) were committed with full knowledge and awareness of Plaintiff's registration of its Marks. Defendants' acts of infringement were undertaken and continued with the intent to cause confusion, mistake or deception upon the consuming public. Defendants' commission of such acts with knowledge and awareness of Plaintiff's rights constitutes a willful violation of Section 43(c) of the Lanham Act.

49.    As a direct and proximate result of Defendants' infringement upon Plaintiff's Marks, Plaintiff has suffered and continues to suffer irreparable injury to its business, including, but not limited to loss of sales, profits, business reputation, goodwill, and the likelihood that the distinctive quality of its Marks will be diluted, the losses of which are impossible to calculate.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials,

business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT IV BREACH OF CONTRACT

50.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein.

51.    Pursuant to section 10 of the Franchise Agreement, Defendants were obligated to remit certain Joining Fees and Referral Office Fees and certain Royalty and Advertising fees.

52.    In spite of their obligation to do so, Defendants have failed to remit the fees due and owing under the Franchise Agreement.  As of October 5, 2005, the amount of fees owed was at least $226,250.34.  In addition, Plaintiffs have lost the anticipated future revenue from the Franchise Agreement in an amount of at least $90,016.00.

53.    Defendants' failure to remit the fees due and owing amounts to a breach of the Franchise agreement and as a direct and proximate result of this breach, Plaintiff has suffered damage.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants to account for any and all revenue derived as a result of

marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

B) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

C) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT V BREACH OF CONTRACT

54.     Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 53 above as though fully set forth herein.

55.     Pursuant to section 18 of the Franchise Agreement, upon termination of the Franchise Agreement, Defendants were to cease all use of Plaintiff's Marks.

56.     In spite of their obligation to do so, Defendants have continued to use Plaintiff's Marks.

57.     Defendants failure to cease and desist from using Plaintiff's Marks upon termination of the Franchise Agreement amounts to a breach of the Franchise agreement and as a direct and proximate result of this breach, Plaintiff has suffered damage.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of

marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT VI VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT

58.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 57 above as though fully set forth herein.

59.    At all relevant time there was in force an effect the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, which provides:

"(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(1)    passes off goods or services as those of another;

(2)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3)    causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

...

    (5)       represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

...

    (12)     engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2.

60.     As a direct and proximate result of Defendants' violation of the Illinois Deceptive Trade Practices Act, Plaintiff has suffered and continues to suffer damage.

61.     Defendants aforementioned actions represent knowing and willful violations of the Illinois Deceptive Trade Practices Act, such that Plaintiff is entitled to recovery of attorneys fees. 810 ILCS 510/3

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

    A)  Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

    B)  Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

    C)  Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the

like;

D) Awarding compensatory and exemplary damages in amount to be proven at

trial as well as attorneys fees and costs; and

E) Granting such other and further relief as this Honorable Court deems just and

proper.

## COUNT VII VIOLATION OF ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT

62.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1

through 61 above as though fully set forth herein.

63.    At all relevant time there was in force an effect the Illinois Consumer Fraud

and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, which provides:

> "Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use or employment of any deception, fraud, false
> pretense, false promise, misrepresentation or the concealment, suppression or
> omission of any material fact, with intent that others rely upon the concealment,
> suppression or omission of such material fact, or the use or employment of any
> practice described in Section 2 of the "Uniform Deceptive Trade Practices Act",
> approved August 5, 1965, in the conduct of any trade or commerce are hereby
> declared unlawful whether any person has in fact been misled, deceived or
> damaged thereby."

810 ILCS 505/2.

64.    By their violation of the Illinois Deceptive Trade Practices Act, as set forth in

Count VII of this Verified Complaint and by its deceptive and ongoing use of Plaintiff's

Marks has and continues to be in violation of the Illinois Consumer Fraud and Deceptive

Practices Act.  As a direct and proximate result of Defendants' violation, Plaintiff has suffered

and continues to suffer damage.

65.    Defendants' aforementioned actions represent knowing and willful violations of the Illinois Deceptive Trade Practices Act, such that Plaintiff is entitled to recovery of attorneys fees. 810 ILCS 510/3

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A)    Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B)    Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C)    Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D)    Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs; and

E)    Granting such other and further relief as this Honorable Court deems just and proper.

## <u>COUNT VIII VIOLATION OF W.S.A. 100.18(1)</u>

66.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 65 above as though fully set forth herein.

67.    At all relevant time there was in force an effect W.S.A. 110.18(1), which

provides:

> "No person, firm, corporation or association, or agent or employee thereof, with intent
> to sell, distribute, increase the consumption of or in any wise dispose of any real
> estate, merchandise, securities, employment, service, or anything offered by such
> person, firm, corporation or association, or agent or employee thereof, directly or
> indirectly, to the public for sale, hire, use or other distribution, or with intent to induce
> the public in any manner to enter into any contract or obligation relating to the
> purchase, sale, hire, use or lease of any real estate, merchandise, securities,
> employment or service, shall make, publish, disseminate, circulate, or place before the
> public, or cause, directly or indirectly, to be made, published, disseminated, circulated,
> or placed before the public, in this state, in a newspaper, magazine or other
> publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet,
> letter, sign, placard, card, label, or over any radio or television station, or in any other
> way similar or dissimilar to the foregoing, an advertisement, announcement, statement
> or representation of any kind to the public relating to such purchase, sale, hire, use or
> lease of such real estate, merchandise, securities, service or employment or to the
> terms or conditions thereof, which advertisement, announcement, statement or
> representation contains any assertion, representation or statement of fact which is
> untrue, deceptive or misleading."

W.S.A.100.18(1).

68.    In carrying out the aforementioned Acts, Defendants have knowingly and

willfully violated and continue to knowingly and willfully violate this statute.

69.    As a direct and proximate result of Defendants knowing and willful violation

of this statute, Plaintiff has suffered and continues to suffer injury.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this

Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all

use or misuse of its Marks or otherwise infringing upon the exclusive rights

granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of

18

marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT IX COMMON LAW UNFAIR COMPETITION

70.     Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 69 above as though fully set forth herein.

71.     The Acts described above reflect Defendants' plan and actions to, without authority, consent or privilege, imitate and attempt to pass off its real estate services as having received sponsorship or approval of Plaintiff.  Defendants' conduct also dilutes the value of Plaintiff's Marks built by Plaintiff at the cost of substantial time, effort and expense.  Such conduct on the part of Defendants constitutes unfair competition under the common law and unless Defendants' unfair competition is not immediately restrained and enjoined, Plaintiff will continue to suffer irreparable harm and injury.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and proper.

## COUNT X UNJUST ENRICHMENT

72.    Plaintiff hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 71 above as though fully set forth herein.

73.    Defendants have benefited and continue to benefit from their wrongful and unauthorized use of Plaintiff's Marks after termination of the Franchise Agreement and have

not paid any royalty or other Franchise Fee in return for the benefit received.

74.    Defendants' failure to compensate Plaintiff for the ongoing use of its Marks constitutes unjust enrichment and Plaintiff has suffered damage as a direct and proximate result.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering Defendants preliminarily and permanently enjoined from any and all use or misuse of its Marks or otherwise infringing upon the exclusive rights granted Plaintiff in its Marks;

B) Ordering Defendants to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with Plaintiff's Marks;

C) Ordering Defendants to promptly surrender to Plaintiff or destroy all items in their possession, custody or control that bear Plaintiff's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like;

D) Awarding compensatory and exemplary damages in amount to be proven at trial as well as attorneys fees and costs against Defendants jointly and severally; and

E) Granting such other and further relief as this Honorable Court deems just and

proper.

Respectfully submitted,

**GMAC REAL ESTATE, LLC**, Plaintiff

By:     \s\ Richard C. Perna
        One of Its Attorneys

Richard C. Perna (6193236)
Michelle L. Feola (6281376)
FUCHS & ROSELLI, LTD.
440 West Randolph Street, Suite 500
Chicago, Illinois 60606
Tel: (312) 651-2400
Fax: (312) 651-2499

## VERIFICATION BY CERTIFICATION

I, Richard D. Ballot, being of full age and duly sworn, upon oath, deposes and states:

1.     I am in-house counsel for GMAC Real Estate, LLC and have personal knowledge of the facts alleged herein and am duly authorized to so represent and am prepared to testify to them if called as a witness.

2.     I have read the foregoing Verified Complaint at Law and the allegations contained therein. Except as to those allegations alleged to be on information and belief, which I believe to be true, all of the allegations in this Verified Complaint at Law are true based upon my personal knowledge, Plaintiff's records and information available through Plaintiff's employees.


By:    _____
       RICHARD D. BALLOT, Associate Counsel for
       GMAC REAL ESTATE LLC

08CV5043
JUDGE GUZMAN
MAGISTRATE JUDGE ASHMAN

CEM

# GMAC Real Estate, LLC

# Real Estate Service Contract

**2000**
53M/54YTD/80SF


EXHIBIT

A Contract between **GMAC REAL ESTATE, LLC,** a Delaware limited liability company, with its principal offices at 477 Martinsville Road, Liberty Corner, New Jersey 07938 ("GMAC Real Estate"); and

| Waterfront Realty Group, Inc. | DBA    Waterfront Realty Group, Inc. |
|---|---|
| Exact name under which Real Estate License is held. ("Member") | (Any change in DBA requires prior written approval) |

FEDERAL ID#    65 - 0088386

## 1.    THE SERVICE.

GMAC Real Estate and its predecessors have developed a service (the "Service") which will permit use of the Marks (as defined in Section 3) including the Mark "GMAC Real Estate" in the promotion and sale of residential real estate. The Service provides those firms selected to be members with the opportunity to use the Marks and to participate in the other benefits outlined in this Contract.

GMAC Real Estate will provide guidelines regarding the use of the GMAC Real Estate name and other Marks. Such guidelines are intended to maximize the value of the nationally recognized image of GMAC Real Estate and improve the effectiveness of Members' advertising, public relations, personnel recruiting, and sales promotion programs.

GMAC Real Estate facilitates referrals between members and develops systems and programs to deliver sales training and education, management training, and client promotional materials to its members. GMAC Real Estate will periodically provide a national convention for the benefit of the membership.

GMAC Real Estate will strive continually to improve the Service through development of new programs and review of existing programs. GMAC Real Estate will seek recommendations from members that will strengthen the organization at local and national levels.

## 2.    RELATIONSHIP OF THE PARTIES.

The relationship of the parties is that of two independently owned and operated businesses which share similar mutual interests: to grow and prosper through the sale of residential real estate.

Member agrees to conduct its real estate brokerage business in such fashion as to reflect favorably at all times on GMAC Real Estate and the good name, goodwill, and reputation thereof, and in compliance with all laws and regulations pertaining to the operation of its real estate brokerage business.

3.    **THE MARKS.**

A.    **OWNERSHIP AND MODIFICATION OF THE MARKS**

GMAC Real Estate, LLC is the owner or licensee of the GMAC Real Estate trademarks, service marks, logos, designs, colors, and other commercial symbols used to identify the products and services offered by GMAC Real Estate franchises, including the mark "GMAC REAL ESTATE" (collectively the **"Marks"**). The Marks may include certain logos owned by Meredith Corporation. Meredith Corporation has granted to GMAC Real Estate a license to use and to sublicense these logos. Member acknowledges that Member's right to use the Marks is derived solely from this Contract and is limited to the operation of a real estate brokerage business by Member pursuant to and in compliance with this Contract and all applicable standards, specifications, and operating procedures prescribed by GMAC Real Estate from time to time during the term of this Contract. Any unauthorized use of the Marks by Member shall constitute a breach of this Contract and an infringement of the rights of GMAC Real Estate in and to the Marks. GMAC Real Estate will protect and defend the Marks in order to maintain their value to Member and GMAC Real Estate. Member agrees that all goodwill resulting from its use and promotion of the Marks will accrue to the benefit of GMAC Real Estate.

If it becomes advisable at any time in the sole judgment of GMAC Real Estate to modify or discontinue use of any Mark and/or for Member's business to use one or more additional or substitute trademarks or service marks or substitute trade dress, Member agrees to comply with the directions of GMAC Real Estate to modify or otherwise discontinue the use of such Mark and/or to use one or more additional or substitute trademarks, service marks, logos or commercial symbols or substitute trade dress after notice thereof by GMAC Real Estate. All provisions of this Contract applicable to the Marks shall apply to any other trademarks, service marks and commercial symbols hereafter authorized in writing for use by and licensed to Member by GMAC Real Estate. The term "Marks" shall include any marks developed and/or registered in the future.

GMAC Real Estate shall have no obligation to reimburse Member for any expenditures made by Member to modify or discontinue the use of a Mark or to adopt substitutes for a discontinued Mark including without limitation any expenditures relating to advertising or promotional materials or to compensate Member for any goodwill related to the discontinued Mark. Notwithstanding the foregoing, if GMAC Real Estate changes the primary service mark of the system so that it no longer includes the words "GMAC Real Estate" or some variation thereof, GMAC Real Estate will (a) provide Member twelve (12) months' prior written notice of the change and (b) allow Member to terminate this Contract at the end of the twelve month notice period. If Member elects to so terminate this Contract, Member shall notify GMAC Real Estate in writing at least ninety (90) days before the expiration of the twelve month notice period and shall comply with all post-termination obligations contained in this Contract.

### B.    USE OF MARKS.

To maintain the integrity of the Marks and the Service, GMAC Real Estate has the right to control the quality of all materials and programs bearing the Marks and the manner in which the Marks are used.

The Marks shall be used: (1) only in conjunction with permanent real estate sales offices approved by GMAC Real Estate, and (2) only in the form and style authorized by GMAC Real Estate as outlined from time to time in its manuals. Any departure from the manuals or any use of the Marks on printed materials not outlined in the manuals must be approved in advance in writing by GMAC Real Estate. Use of the Marks on any other publication (e.g., homeowner newsletter, decorating magazine, or booklets) is specifically prohibited unless the publication is approved in writing by GMAC Real Estate prior to publication.

It is agreed that Member will use the Marks in all residential real estate brokerage activities within the Licensed Territory (as described in Section 6) during the term of this Contract. Use of the Marks on non-residential real estate brokerage activities or in any other manner is prohibited.

The Marks shall not be used to identify any property, goods, or services provided by Member other than those specifically approved in writing by GMAC Real Estate. It is understood that Member will not use the Marks in any manner which indicates or implies GMAC Real Estate endorsement of the home being sold by Member, including its design, quality, or price.

Member shall not use the GMAC Real Estate name or any other Mark as part of its corporate name, as part of an Internet (or other computer network) domain name or in any other manner not expressly authorized in writing by GMAC Real Estate. The Marks shall be used as part of the trade name of Member for residential real estate brokerage activities only.

Because complete and detailed uniformity under many varying conditions may not be possible or practical, GMAC Real Estate specifically reserves the right and privilege, in its sole discretion and as it may deem in the best interests of all concerned in any specific instance, to vary standards for any member based upon the peculiarities of particular circumstances, business practices or any other conditions which GMAC Real Estate deems to be of importance to the successful operation of such member's business. Member shall have no recourse against GMAC Real Estate for any variation from standard specifications and practices granted to any other member and shall not be entitled to require GMAC Real Estate to grant Member a like or similar variation.

### 4.    MATERIALS

Member agrees that use of all GMAC Real Estate materials (including copyrighted materials) is restricted to use in its own business. Member will not license GMAC Real Estate materials and programs to others or reproduce such materials and programs for its own use, or adapt and use, or permit any of its sales associates to adapt and use, any GMAC Real Estate

materials on an Internet (or other computer network) site or in any other manner without advance written approval by GMAC Real Estate.

To maintain consistency, all building signs, yard signs, promotional items, and printed materials must adhere to the design, size, and colors specified in the manuals supplied by GMAC Real Estate from time to time. Any departure from the specifications set forth therein must be approved in writing in advance by GMAC Real Estate. Substitution of materials that are used in the construction of these items, or lack of compliance with the specified design, size, coloration, or use of the Marks is unacceptable and will be deemed a breach of this Contract. Each office will display building signs in conformance with the specified standards of design and materials within sixty (60) days of the Opening Date. If a particular zoning ordinance or lease restriction precludes use of a standard approved sign, the specifications for an alternate sign must be presented for approval to GMAC Real Estate with a copy of the zoning ordinance or lease restriction.

All business records, letterheads, business forms, advertising and other materials (excluding business cards) disseminated to the public and used in the business licensed hereunder shall indicate Member's independent ownership of the brokerage business with the statement "An Independently Owned and Operated Firm" or an equivalent statement.

GMAC Real Estate will provide the initial development of a new logo treatment for Member, at no cost. GMAC Real Estate will provide a franchise opening/starter kit, including operating and presentation manuals, videotapes, audio tapes, advertising materials, magazines and marketing products, at no cost.

## 5. TRAINING.

For New Members: GMAC Real Estate agrees to conduct a Management Orientation Session ("MOS") in Des Moines, Iowa; Liberty Corner, New Jersey; or such other location GMAC Real Estate designates. Member agrees to attend the first available MOS after execution of this Contract. GMAC Real Estate will pay the MOS registration fee for one principal broker or key manager of Member to attend an MOS at the site selected by GMAC Real Estate; provided that the designated person attends MOS within twelve (12) months of the Opening Date in Section 28 of this Contract.

For Renewing Members: Within six (6) months of renewal, Member shall send, at its expense, at least one key management representative (for example, broker, general manager or sales manager) to an MOS at a site GMAC Real Estate designates.

6.    **GRANT OF THE LICENSE.**

Member represents that it presently operates offices, or will by the Opening Date operate offices at the following locations:

| Location | ~~2206~~ 2026 North Tamiami Trail in Naples, Florida   34102 |
| Location | 1395 Third Street South in Naples, Florida   34102 |
| Location | |
| Location | |

GMAC Real Estate grants to Member an exclusive license to establish and operate residential real estate office(s) displaying the Marks within its Licensed Territory as follows:

☐    If this block is checked, Member's Licensed Territory shall be its existing office location(s). If Member desires to open additional offices, it shall apply to GMAC Real Estate for written permission to do so. If the location of the proposed additional office is in an area not licensed to another member, GMAC Real Estate may grant such permission and may, at its option, charge Member a Joining Fee for an Expansion Territory.

☒    If this block is checked, Member's Licensed Territory is described in the written description set forth in **Exhibit A** to this Contract. Member may open additional offices in the Licensed Territory provided that it must notify GMAC Real Estate in writing of the location of each office before such office opens. The continuance of Member's exclusivity in the Licensed Territory is conditioned upon Member meeting the periodic Performance Standards set forth in **Exhibit A** and may be reduced as provided therein

Irrespective of whether Member is required to obtain permission from GMAC Real Estate to open additional offices, Member shall notify GMAC Real Estate in writing in the event it opens such offices or acquires additional offices as the result of an acquisition or merger and, if the acquisition or merger involved another GMAC Real Estate firm in market area(s) not contiguous to Member's Licensed Territory, GMAC Real Estate may require that the offices gained by Member in such transaction be treated as a separate reporting unit for the purpose of computing Service Fees as provided in Section 10 below. Nothing in this Section shall preclude Member from listing, selling, or advertising residential real estate outside its Licensed Territory or in an adjacent member's licensed territory. Commissions and fees from such transactions shall be included in the Member's Residential Commission Income report to GMAC Real Estate.

Member shall neither (a) establish or own an interest in any real estate brokerage office or real estate information center within the Licensed Territory not licensed by GMAC Real Estate nor (b) establish or own an interest in any real estate brokerage office or real estate nformation center using the Marks located outside the Licensed Territory without the written approval of GMAC Real Estate.

5

Member understands and agrees that it may not sublicense the GMAC Real Estate name or any other Mark.

## 7.    TERRITORIAL RIGHTS.

GMAC Real Estate reserves the right to license other real estate brokers to use the Marks in any area not licensed to Member. GMAC Real Estate reserves the right to establish anywhere franchises or company-owned outlets or other channels of distribution selling or leasing similar products or services under a different trademark.

## 8.    NO CONFLICTING LICENSE.

During the term of this Contract, irrespective of whether this Contract is terminated prior to the end of its term pursuant to Section 17, neither Member nor its principals, owners or Broker of Record shall become affiliated with any other real estate licensing system; provided, however, that the Broker of Record of Member shall not be subject to this provision if Member is sold or goes out of business unless he or she is also an owner.

## 9.    RESIDENTIAL COMMISSION AND FEE INCOME.

Commission and fee income generated from the sale of residential real property ("**Residential Commission Income**") are used as the basis for the calculation of fees. Residential Commission Income is computed after division with cooperating brokers in other firms and after payment of referral fees. No expenses or membership fees of any type (including multiple listing service fees) or division with brokers and sales associates working in association with Member may be deducted in the computation of Residential Commission Income.

a.    "**Residential Commission Income**" is defined as the sum of all commissions and other fees received by Member including any mortgage, lien, or other consideration held or earned by Member in lieu of a commission. Residential Commission Income shall include any selling bonuses, document preparation fees and administration fees. Referral payments received from GMAC Real Estate are not included in Residential Commission Income.

b.    "**Residential Real Property**" is defined as new and resale single family homes, farm houses, residential acreage, condominiums and cooperatives, townhouses, vacation homes including interval-ownership/ time-share homes, mobile homes when affixed to real property, residential listings sold at auction, housing of up to and including four-dwelling units on one lot, all unimproved single lots, and other unimproved land and vacant lots intended by the purchaser thereof to be used for recreational purposes or as "Residential Real Property" as that term is otherwise defined in this Section.

c.    Member is not required to include in its Residential Commission Income commissions or fees earned in connection with rental, property management or commercial real estate transactions or commissions and fees attributable to the non-residential portion of farm transactions.

10.    **FEES.**

In consideration for the license and for this Contract, Member agrees to pay the following fees to GMAC Real Estate:

a.    **Joining Fee.** If this is Member's initial Contract and not a renewal Contract, Member agrees to pay a Joining Fee in an amount and subject to the terms and conditions set forth in the Joining Addendum attached hereto as **Exhibit B**.

b.    **Service Fee.** A Service Fee is due and payable within ten (10) days after the end of each month on Residential Commission Income received by Member during the previous month. Member's Service Fee shall be computed on a cumulative, yearly basis, with the amount of such Service Fees to be determined in accordance with the following Service Fee Table:

| Member's Year-to-Date Residential Commission Income Ranges | | | | Applied Percentage |
|---|---|---|---|---|
| On the first | $250,000 | (Up to | $250,000 RCI) | 7.00% |
| On the next | 750,000 | ($250,001 - | 1,000,000 RCI) | 6.00% |
| On the next | 1,500,000 | ($1,000,001 - | 2,500,000 RCI) | 5.00% |
| On the next | 2,500,000 | ($2,500,001 - | 5,000,000 RCI) | 4.00% |
| On the next | 2,500,000 | ($5,000,001 - | 7,500,000 RCI) | 3.50% |
| On the next | 2,500,000 | ($7,500,001 - | 10,000,000 RCI) | 3.00% |
| On the next | 5,000,000 | ($10,000,001 - | 15,000,000 RCI) | 2.50% |
| On all remaining RCI | | (Over $15,000,000 RCI) | | 2.00% |

For purposes of computing fees, the start of each year shall be the anniversary of Member's Opening Date.

New Members are not required to pay Service Fees on Residential Commission Income earned as a result of transactions under contract or in escrow on the Opening Date, provided that such transactions are closed within thirty (30) days of the Opening Date.

GMAC Real Estate may spend a portion of the Service Fees collected on advertising and promotion of the GMAC Real Estate system and its Members. GMAC Real Estate shall have sole discretion over the amount it spends on advertising, and over the creative concepts and media used in any advertising. Member acknowledges that any advertising is intended to enhance the reputation of the system generally, and that GMAC Real Estate undertakes no obligation to ensure that advertising expenditures are proportionate to or equivalent to any particular member's fees paid.

c.    **Referral Office Fee.** A Referral Office Fee of $438 per year shall be paid by Member for each office using the Marks; provided, however, that Member shall be charged only one referral office fee in any year its Residential Commission Income is less than $500,000. The Referral Office Fee shall be paid in monthly installments and shall be billed to Member's account. Member will advise GMAC Real Estate within thirty (30) days of the opening or closing of any office. As used in this Section, "office" means residential real estate sales office

and specifically excludes offices used solely for administrative purposes, mall kiosks or pushcarts and model home sales sites.

    d. **Referral Fee**. Within ten (10) days after closing, each Member who receives a referral from GMAC Real Estate or any of its members or affiliates which results in a closing shall make payment in accordance with Section 14 of this Contract.

    e. **Renewal Fee**. A renewal fee of $250 is due upon each renewal of this Contract.

    f. **Transfer Fee**. A transfer fee of $250 will be due upon approval by GMAC Real Estate of a transfer of this Contract or of more than a thirty percent (30%) ownership interest in Member or of a controlling interest.

    g. **Convention Registration Fee**. Member shall pay a convention registration fee, which shall be billed to Member's account within ninety (90) days after the convention. The convention registration fee shall be an amount equal to the lowest-priced registration fee offered in connection with such convention, and payment of this fee shall entitle Member to one registration at such convention.

## 11. PAYMENT OF FEES.

Member agrees to report and make payment of Service Fees to GMAC Real Estate within ten (10) days after the end of each month using forms provided or computer software recommended by GMAC Real Estate. Member agrees to furnish any other reports, such as annual financial statements, as reasonably requested by GMAC Real Estate.

## 12. LATE PAYMENT.

Should Member become delinquent on any deferred payment plan, GMAC Real Estate shall have the right to accelerate the balance and declare the entire amount due. Additionally, if Member is late paying any amount owed to GMAC Real Estate, Member agrees to pay GMAC Real Estate interest at a rate which will not exceed an annual rate of prime plus four percent (4%), but in any event not less than twelve percent (12%) or more than fifteen percent (15%) on the unpaid amount after the due date. Prime is defined as the rate charged by Citibank, N.A., New York City, to its most credit-worthy customers for 90-day loans. In the event Member fails to pay any amount when due, GMAC Real Estate shall also have the right, at its option, to deduct any and all such amounts from any payments due to Member pursuant to this Contract or otherwise. In the event collection action is necessary to recover monies due GMAC Real Estate, Member agrees to pay interest and costs of collection, including agency and attorneys fees and court costs.

## 13. VERIFICATION RIGHTS.

Member agrees to provide annual financial statements in a form acceptable to GMAC Real Estate. Member must keep a separate set of books and records for the residential real estate brokerage business it conducts pursuant to this Contract. Member agrees to permit a GMAC Real Estate representative to inspect and audit Member's accounting records and books for each line

of business in which Member engages. During the course of an audit, if GMAC Real Estate discovers a shortage of three percent (3%) or more in Residential Commission Income reported, Member agrees to pay GMAC Real Estate, in addition to any amounts due, an interest payment as outlined in Section 12, plus the actual travel costs and expenses of the auditors involved in the audit. GMAC Real Estate shall have the right to inspect Member's offices and to confer with Member, its sales associates and its employees to assure compliance with quality standards GMAC Real Estate prescribes from time to time.

14.    **REFERRALS.**

Member agrees to place all residential real estate referrals with GMAC Real Estate members or designated approved brokers, whether or not there is a member in the destination location. Where the referral is to an area yet unlicensed, GMAC Real Estate will select a firm which, in its judgment, is qualified to handle such referrals. Referrals may be placed through GMAC Real Estate or directly with the approved destination broker. Member agrees to register all residential referrals. Designated, approved brokers may include a broker approved under a strategic alliance agreement or a non-member in a market where no GMAC Real Estate member exists. Member agrees to pay referral fees and royalties as hereafter set forth.

Member agrees that upon receipt of a commission involving a referral – whether buying or listing – it will remit to GMAC Real Estate a fee equal to two and-one-half percent (2.5%) of the Residential Commission Income earned from the referred side of the transaction. Member also will remit to the real estate brokerage from which the referral originated twenty-two and one-half percent (22.5%) of the Residential Commission Income earned from the referred side of the transaction.

Failure by Member to comply with the policies, standards, and procedures regarding referrals constitutes a breach of this Contract and GMAC Real Estate may, at its option, suspend further referrals to Member, require relocation training attendance, or terminate Member in accordance with Section 17 of this Contract. GMAC Real Estate also may, at its option, suspend further referrals to Member if Member is in breach of any other provision of this Contract or fails to execute a renewal Contract on a timely basis.

Member acknowledges that it acquires no rights or expectations with respect to referrals beyond those expressly stated in this Section.

15.    **PERFORMANCE STANDARDS.**

Member agrees that market coverage, consistent performance, recruitment and training of a full-time, professional sales staff and commitment to GMAC Real Estate programs are necessary for retention of the license granted by this Contract.

Member's performance shall be reviewed annually on the anniversary of Member's Opening Date. Member's average Residential Commission Income shall, for the twelve (12) month period being reviewed, exceed seventy-five percent (75%) of the higher of (a) Residential Commission Income attained during the first twelve (12) months after the Opening Date, or (b) the average of the thirty-six (36) months prior to the most recent twelve (12) month period being

reviewed. If Member has been open less than forty-eight (48) months, the monthly average of the comparison period will be based on the number of months open, but never less than twelve (12) months. Failure by Member to meet this performance standard shall constitute a default under this Contract, and GMAC Real Estate may, at its option, terminate this Contract.

## 16.   ASSIGNMENT AND OWNERSHIP

a.   **Assignment.**   GMAC Real Estate shall have the right to transfer or assign all or any part of its rights or obligations under this Contract to any person or legal entity.

Member acknowledges that GMAC Real Estate entered into this Contract in reliance upon the qualifications and representations of Member and, where Member is a partnership, corporation or other entity, upon the qualifications and representations of Member's principals and majority stockholders, respectively. Therefore, Member may assign this Contract (1) only in conjunction with the transfer of ownership of the assets of its real estate brokerage business, (2) only to the new owner thereof, (3) only where all of Member's accrued monetary obligations and all other outstanding obligations to GMAC Real Estate have been satisfied, (4) and only upon written request and with the prior written approval of GMAC Real Estate, such approval not to be unreasonably withheld. Member shall remain liable for all of the obligations to GMAC Real Estate in connection with the franchised business prior to the effective date of the transfer. Any transfer or assignment of an ownership or other interest in Member which would have the effect of transferring control of Member shall be made only (1) where all of Member's accrued monetary obligations and all other outstanding obligations to GMAC Real Estate have been satisfied and (2) upon written request and with the prior approval of GMAC Real Estate, such written approval not to be unreasonably withheld.

GMAC Real Estate will require a copy of the transfer agreement and may require, as a condition of the transfer, the following:

(1)   Execution by the assignee of a new Real Estate Service Contract in the form then being offered by GMAC Real Estate, and

(2)   Attendance by the principal of the assignee at a Management Orientation Session.

b.   **Ownership.**   Member shall identify below the type of business entity which Member has formed. Listed below are the principals and the shareholders who own a ten percent (10%) or more interest in Member and the percentage interest each owns. Member will notify GMAC Real Estate in writing prior to any change in the percentage interests shown below. Member will also notify GMAC Real Estate in writing prior to any change of the Broker of Record named below. (If Member is owned by another legal entity, Member shall also identify that entity and its majority Shareholders.)

☒   corporation: organized under the laws of the State of _____Florida_____

☐   limited   liability   company:   organized   under   the   laws   of   the   State   of
_____

10

☐    partnership: organized under the laws of the State of _____

☐    sole proprietorship

| | | | | |
|---|---|---|---|---|
| Jack Newby | 30 | % | Thomas Ouverson | 30 % |
| Rick Newby | 20 | % | Waterfront Realty Group | 20 % |
| | ___ | % | _____ | ___ % |

(Principals/Shareholders listed)

_____
(Parent Company)

____ Jack V. Newby
(Broker of Record)

c.  **Constructive Transfer.**  Any transfer upon the death or mental incapacity of a Member or any principal or shareholder of Member, which transfer would result in a transfer of control of Member or of the franchised business, shall be deemed a transfer subject to Section 16.a.  An individual Member's survivor (if business is held in joint tenancy), heirs, legatees, guardian, personal representative or conservator, or if a Member is a partnership or corporation, the remaining principals or shareholders, together with the deceased or incapacitated principal's or shareholder's survivor, heirs, legatees, guardian, personal representative or conservator, may continue to operate the business subject to written notification of GMAC Real Estate and satisfaction by the heirs, legatees, guardian, personal representative or conservator of the conditions of Section 16.a for transfer of interest.

d.  **Notice of Transfer.**  Member will notify GMAC Real Estate as early as practicable of acquisition or merger negotiations and in any event will notify GMAC Real Estate at least ninety (90) days prior to the proposed transfer of ownership of its real estate business.

17.   **TERMINATION.**

This Contract may be terminated upon any one of the following conditions (in addition to the conditions specifically mentioned elsewhere in this Contract).   State law may set forth requirements for termination or nonrenewal procedures which differ from those set forth herein. Prior to the effective date of termination, Member shall pay all monies due to GMAC Real Estate, and shall furnish GMAC Real Estate with all required reports and records.   After termination, GMAC Real Estate shall have no further obligations to Member.

a.  **By Member**: If GMAC Real Estate is in breach of this Contract, Member may terminate this Contract effective upon delivery of written notice of termination, provided that Member has delivered to GMAC Real Estate written notice of such breach which specified the breach and GMAC Real Estate fails to cure such breach within thirty (30) days after receipt of the notice of breach or, if the breach is one which may not reasonably be expected to be cured within thirty (30) days, a cure of such breach commenced by GMAC Real Estate within that time and diligently prosecuted thereafter.

The giving of a notice of termination by Member pursuant to Paragraph a above shall be deemed to be an irrevocable waiver of the exclusivity of the Licensed Territory granted Member in Section 6 above, and GMAC Real Estate may, during the notice period, license other firms to use the Marks in the Licensed Territory. Further, GMAC Real Estate may, at its option, discontinue placement of referrals and fulfillment of material orders following receipt of a notice of termination given pursuant to this Section.

b. **Upon Member's Insolvency:** Member shall be deemed in default under this Contract, and all rights granted to Member hereunder shall automatically terminate, without notice to Member, if Member becomes insolvent or makes a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Member or such petition is filed against and is not opposed by Member; or if Member is the subject of any other action or proceeding asserting creditor's rights; or if a final judgment against Member remains unsatisfied or of record for at least thirty days; or if Member is dissolved; or if execution is levied against Member's business or property.

c. **By GMAC Real Estate:** Member shall be deemed in default under this Contract, and GMAC Real Estate may, at its option, terminate this Contract and all rights granted to Member hereunder, without affording Member any opportunity to cure the default, effective immediately upon receipt of notice by Member from GMAC Real Estate, upon the occurrence of any of the following events:

(1)    If Member at any time ceases to operate or otherwise abandons its real estate brokerage business or closes all of its offices. A closed office shall mean one which is (i) not open and staffed during all regular business hours, or is (ii) not equipped as necessary for the transaction of real estate brokerage activities; provided, however, that if Member's business premises are damaged or destroyed, Member shall have thirty (30) days after such event in which to apply for approval from GMAC Real Estate to relocate or reconstruct the premises, which approval shall not be unreasonably withheld. Member agrees to notify GMAC Real Estate immediately upon the occurrence of any cessation or abandonment of its brokerage business or the closure of all of its offices;

(2)    If the real estate license of Member or any of its principals is suspended, revoked or not renewed, or if Member or any of its principals otherwise forfeits the right to do or transact business in the jurisdiction where the real estate brokerage business is located. Member agrees to notify GMAC Real Estate immediately upon the occurrence of any of the foregoing events;

(3)    If Member or any of its principals conducts its brokerage business in such a fashion as to reflect unfavorably on GMAC Real Estate or the Marks or on the goodwill, good name, and reputation thereof; or if Member engages in any activity in violation of any laws pertaining to the operation of the real estate brokerage business, including laws relating to fair practices and consumer protection. Member agrees to notify GMAC Real Estate immediately upon the filing of any legal action alleging such violations by Member;

(4)    If Member or any of its principals purports to transfer any rights or obligations under this Contract or any interest in Member to any third party without GMAC Real Estate's prior written consent, contrary to the terms of Section 16 of this Contract;

(5)    If Member has made any material misrepresentation in its application or Business and Financial History Form; or if Member knowingly maintains false books or records, or submits or makes any false reports or statements to GMAC Real Estate; or

(6)    If Member is in default of any provision of this Contract and previously received a Notice of Termination from GMAC Real Estate for the same, similar, or different default in the preceding 12-month period.

d.  Except as provided in Sections 17.b and 17.c of this Contract, Member shall have thirty (30) days after its receipt from GMAC Real Estate of a written Notice of Termination within which to remedy any default of Member under this Contract and to provide evidence of remedy to GMAC Real Estate. If any such default is not cured within that time, or such longer period as may be required either by applicable law or by the specific provision of this Contract of which Member is in default, then, in such event, this Contract shall terminate without further notice to Member, effective immediately upon the expiration of the cure period. Member shall be in default hereunder for any failure to comply substantially with any of the requirements imposed on Member by this Contract, or to carry out the terms of this Contract in good faith. Such defaults shall include, without limitation, the occurrence of any of the following events:

(1)    If Member fails, refuses, or neglects promptly to pay when due any monies owing to GMAC Real Estate or to submit the financial information required by GMAC Real Estate pursuant to this Contract;

(2)    If Member fails to fulfill its Performance Standards as described in Section 15 or Exhibit A, or fails to maintain any of the other standards or procedures prescribed by GMAC Real Estate in this Contract or otherwise in writing; or

(3)    If Member misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or GMAC Real Estate's rights therein.

## 18.    OBLIGATIONS UPON TERMINATION.

After termination, expiration, transfer, or assignment of this Contract for any reason, Member shall cease to have any right to use the Marks in any manner. Upon termination or expiration, Member shall:

a.  Discontinue use of all Marks and the words GMAC Real Estate and not hold itself out in any manner that would give the public the impression it is still a licensee of GMAC Real Estate. Member agrees that GMAC Real Estate shall have the right to secure an order enjoining Member from any use of the Marks.

b. Pay GMAC Real Estate all monies due on the date the termination or expiration of the Contract became effective and the following additional fees, which shall become due immediately after said date:

(1) Service Fees, computed as set forth above, on Residential Commission Income attributable to transactions in process on the termination date and from anticipated closings attributable to listings obtained while Member was operating pursuant to the Contract; and

(2) Referral Fees, computed as set forth above, on referrals sent or received prior to the date the termination or expiration of the Contract became effective.

c. Surrender to GMAC Real Estate or its authorized representative all signs including yard signs, letterheads, advertising, materials, business cards, and the like bearing the Marks, and return to GMAC Real Estate all manuals, training materials, client promotion materials, and the like bearing the Marks. Member agrees that GMAC Real Estate shall have the right to secure an order enjoining Member from any use of materials or programs which are part of the Service.

d. Take immediate steps to cancel all advertising, including advertising in the Yellow Pages of the telephone directory, which carries the Marks.

e. Execute any documents necessary to effect its obligations under this Section and to take such action as GMAC Real Estate may deem reasonably necessary to evidence the fact that Member has ceased using the Marks and has no further interest or right therein.

If after termination, expiration, or nonrenewal of this Contract, Member shall fail or refuse to comply with any of the requirements of this Section, Member shall reimburse GMAC Real Estate in connection with any legal action taken to enforce compliance, including reasonable collection agency and attorney fees and court costs.

## 19.    REPRESENTATIONS AND WARRANTIES

Member represents that it is licensed to sell real estate where it now operates and that its name is duly registered under applicable law.

Member acknowledges that GMAC Real Estate has delivered to Member not less than ten (10) business days prior to the signing of this Contract a copy of the Offering Circular concerning this franchise for the state in which Member intends to do business, which Member has had an opportunity to review. Member further acknowledges that GMAC Real Estate has not, either orally or in writing, represented that Member will achieve at the licensed business any specified level of sales or profit, nor represented the sales or profit level of any other licensee, but has referred Member to the Offering Circular which provides Member with the names, addresses and telephone numbers of other licensees of GMAC Real Estate so that Member can make its own inquiry. Member further acknowledges that any additional inquiry pertaining to the nature of this franchise which Member has made to GMAC Real Estate in writing has been answered in writing to the satisfaction of Member.

14

20.    **ENTIRE AGREEMENT.**

This Contract is the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties relating to the subject matter of this Contract.

21.    **INDEMNIFICATION AND INSURANCE.**

Member shall defend, indemnify, and hold harmless GMAC Real Estate, its agents and employees, from and against any claims for damages, losses, and expenses (including attorney's fees) resulting in any way from the conduct of Member's real estate brokerage business. Maintenance by Member of the insurance coverages specified in the following paragraph shall not be deemed to fulfill Member's indemnification obligation to GMAC Real Estate.

Member shall, at its own expense, purchase and maintain comprehensive general liability insurance, including contractual, products/completed operations, personal injury, and comprehensive automobile liability coverage, including owned, non-owned, and hired automobiles. Minimum limits required are $500,000 per occurrence for bodily injury and $250,000 per occurrence for property damage. GMAC Real Estate must be named as an additional insured. Workers Compensation to the extent required by state law must be carried on each employee. GMAC Real Estate recommends that Member carry errors and omissions insurance coverage to protect Member against losses due to normal operations. Member agrees that all losses resulting from failure to obtain such insurance will be borne by Member. In the event of cancellation, non-renewal, or any material change of Member's required insurance policies, Member must give GMAC Real Estate thirty (30) days' prior written notice. Member will provide a copy of its insurance binder to GMAC Real Estate before the Opening Date and continuous certificates of coverage.

22.    **CHOICE OF LAW.**

This Contract shall be construed in accordance with the laws of the state in which Member is licensed to use the Marks. If Member is licensed to use the Marks in more than one state, this Contract shall be construed in accordance with the laws of the state in which Member is incorporated or, if Member is not a corporation, the state in which Member's principal administrative office is located.

23.    **MODIFICATION OF CONTRACT.**

No changes may be made in this Contract unless in writing and signed by the parties.

24.    **SEVERABILITY**

Each section and provision of this Contract is severable and if one portion is invalid, the remaining portion shall nevertheless remain in full force and effect.

### 25.   NON-WAIVER.

No failure by GMAC Real Estate to take action on any default of Member, whether it is a single instance or a series of incidents, shall constitute a waiver of such default or of the performance required of Member. No express waiver by GMAC Real Estate of any performance or default of Member shall be construed as a waiver of any other or any future obligation or default.

### 26.   NOTICES.

Any notice herein provided for shall be in writing, addressed to GMAC Real Estate at the address in this Contract and to Member at the address indicated below:

2026
~~2206~~ North Tamiami Trail

Naples, FL   34102

### 27.   TERM AND RENEWAL.

The term of this Contract shall be five (5) years.

Member may renew its license as described below if all of the following are true at the expiration of the original term: (a) Member has provided GMAC Real Estate with written notice of its intent to renew at least one hundred eighty (180) days prior to the date of expiration of this Contract and (b) Member is not then and has not been in breach of this Contract. Upon any renewal, Member will execute a new Contract in the form then being offered by GMAC Real Estate. The renewal contract may contain materially different terms than this Contract, including those which relate to fee amount, computation and payment. The renewal contract may also contain performance standards for the renewal term negotiated by the parties as provided by Exhibit A.

If Member continues to use the Marks after the expiration date of this Contract but has failed to execute a renewal Contract or provide notice of non-renewal to GMAC Real Estate, Member will be deemed to be operating on a month-to-month basis under the terms and conditions of the renewal Contract offered Member by GMAC Real Estate. In the event Member desires to terminate its relationship with GMAC Real Estate after expiration of this Contract, but prior to executing a renewal Contract, Member shall be required to give GMAC Real Estate one hundred eighty (180) days' written notice thereof and during the one hundred eighty (180) day period Member will be deemed to be operating under the terms and conditions of the renewal Contract offered Member by GMAC Real Estate.

If Member fails to execute a renewal contract and pay the renewal fee as provided in Section 10.e. within thirty (30) days after the renewal date, GMAC Real Estate may, at its option

16

upon thirty (30) days' notice, terminate Member. If local law requires a longer notice period to Member prior to termination, this Contract shall remain in effect on the month-to-month basis specified in the preceding paragraph until the necessary notice has been given.

## 28.   DATE.

The parties intend that this Contract be executed and effective on ___January 1_____, 20 _01_.

The parties agree the planned Opening Date (Renewal Date) is the 1st day of _____N/A_____, _____. The Opening Date is defined as the date when Member first uses the Marks or the 120th day after the date the Contract is effective, whichever is earlier. In the event the actual Opening Date is different from that specified above, any payment plans based on the specified date will not change and anniversaries of the specified date will determine the start of each contract year for the purpose of computing Service Fees as provided in Section 10.b. If Member is signing this Agreement for a renewal term, the "Opening Date" specified here will be the date used to determine the start of each contract year during the renewal term.

**IN WITNESS WHEREOF**, the parties have executed this Contract.

**GMAC REAL ESTATE, LLC**

By: _____

Title: Senior Vice President

Date: January 30, 2001

Waterfront Realty Group, Inc.
_____
[Name of Member]

By: _____
(Signature of owner, partner or officer)

Title: _____

By: _____
(Signature of owner, partner or officer)

Title: _____

Date: _____

Contract # 53M/54YTD/80SF

## ENDORSEMENT OF PRINCIPALS/SHAREHOLDERS

     Each of the principals or shareholders identified in Section 16.b hereby execute this Contract for the limited purpose of being personally bound by the provisions of Sections 3 (The Marks), 4 (Materials), 8 (No Conflicting License) and 16 (Assignment and Ownership) of the Contract.

_____    Date: 3/27/01
Jack Newby

_____    Date: 3/27/2001
Thomas Ouverson

_____    Date: 3/29/2001
Rick Newby

_____    Date:_____

_____    Date:_____

_____    Date:_____

_____    Date:_____

## Exhibit A-1
## Member's Licensed Territory

Firm Name: _____Waterfront Realty Group, Inc._____    Approved by _____
Jack Newby

City/State: _____Naples, Florida_____    Date: _____January 1, 2001_____

**Metes and Bounds Description of Licensed Territory:**

The licensed territory is bounded by:

Starting at the intersection of U.S. Highway 41 and the northern boundary of Collier County, follow the Collier/Lee County boundary east and then north to the sectional line that extended east intersects with state highway 846.

Follow state highway 846 east to its junction with Everglades Blvd. Follow Everglades Blvd. south to its junction with U.S. Highway 41. Follow U.S. Highway 41 north to the starting point.

The territory includes Henderson Creek.

The licensed territory does *not* include Bonita Beach, Bonita Springs, Bonita Shores or any islands.

(If an Area Map is attached to this Exhibit, this description defines Member licensed territory.)

**Performance Standards.**    Member agrees to meet each of the following standards and requirements for retention of the licensed territory granted in this Contract:

a.    Member shall, during the 12-month period immediately preceding the date specified, exceed the Residential Commission Income amount set forth:

| Residential Commission Income: | $825,000 | Date: January 1, 2002 |
| Residential Commission Income: | $855,000 | Date: January 1, 2003 |
| Residential Commission Income: | $890,000 | Date: January 1, 2004 |
| Residential Commission Income: | $935,000 | Date: January 1, 2005 |
| Residential Commission Income: | $990,000 | Date: January 1, 2006 |

b.    Failure by Member to meet the performance standards set forth in the Exhibit shall constitute a default under this Contract. In the event of a default, **GMAC** Real Estate may, at its option, reduce Member's licensed territory by removing areas not currently being served by Member or by eliminating all of the licensed territory, except for the locations of each of Member's real estate offices. If Member's default occurs in conjunction with the expiration of this Contract, **GMAC** Real Estate may offer Member a renewal contract in which Member's licensed territory has been modified as provided in the preceding sentence.

**Licensed Territory**                                    **Exhibit A-2**

Firm Name: Waterfront Realty Group, Inc.          Date: January 1, 2001

**Area Map:**    This map may not exactly represent the licensed territory.



## YEAR-TO-DATE FEE AMENDMENT

### For Certain Franchises Which Became Members Before May 1, 2000

Section 10.b. of the Contract is deleted and replaced with the following:

b.     In consideration for the license and for this Contract, Member agrees to pay the following fees to GMAC Real Estate:

**Transaction Fee.** A Transaction Fee is due and payable within ten (10) days after the end of each month on Residential Commission Income received by Member during the previous month. Member's Transaction Fees shall be computed on a cumulative, yearly basis, with the amount of such Transaction Fees to be determined in accordance with the following Transaction Fee Table:

| | | Member's Year-to-Date Residential Commission Income Ranges | | Applied Percentage |
|---|---|---|---|---|
| On the first | $125,000 | (Up to | $125,000 RCI) | 4.50% |
| On the next | 125,000 | ($125,001 - | 250,000 RCI) | 4.25% |
| On the next | 125,000 | ($250,001 - | 375,000 RCI) | 4.00% |
| On the next | 125,000 | ($375,001 - | 500,000 RCI) | 3.75% |
| On the next | 250,000 | ($500,001 - | 750,000 RCI) | 3.25% |
| On the next | 250,000 | ($750,001 - | 1,000,000 RCI) | 2.75% |
| On the next | 1,000,000 | ($1,000,001 - | 2,000,000 RCI) | 2.50% |
| On the next | 1,000,000 | ($2,000,001 - | 3,000,000 RCI) | 2.25% |
| On the next | 1,000,000 | ($3,000,001 - | 4,000,000 RCI) | 2.00% |
| On the next | 1,000,000 | ($4,000,001 - | 5,000,000 RCI) | 1.75% |
| On the next | 5,000,000 | ($5,000,001 - | 10,000,000 RCI) | 1.50% |
| On the next | 5,000,000 | ($10,000,001 - | 15,000,000 RCI) | 1.25% |
| On all remaining RCI | | (Over $15,000,000 RCI) | | 1.00% |

For purposes of computing fees, the start of each year shall be the anniversary of Member's Opening Date (as set forth in Section 27). If Member qualifies, Member and GMAC Real Estate may agree to compute the Transaction Fee in accordance with the Member Substantial RCI Transaction Fee Amendment included herein.

**Advertising & Sales Promotion Fee.** An Advertising & Sales Promotion Fee is due and payable ten (10) days after the end of each month on Residential Commission Income received by Member during the previous month. Member's Advertising & Sales Promotion Fee shall be computed on a cumulative, yearly basis, with the amount of such Advertising & Sales Promotion Fees to be determined in accordance with the following Advertising & Sales Promotion Fee Table:

| | | Year-to-Date Residential Commission Income Ranges | | | Applied Percentage |
|---|---|---|---|---|---|
| On the first | $2,000,000 | ($0.00 | - | 2,000,000 RCI) | 2.20% |
| On the next | 500,000 | ($2,000,001 | - | 2,500,000 RCI) | 1.98% |
| On the next | 500,000 | ($2,500,001 | - | 3,000,000 RCI) | 1.78% |
| On the next | 1,000,000 | ($3,000,001 | - | 4,000,000 RCI) | 1.60% |
| On the next | 1,000,000 | ($4,000,001 | - | 5,000,000 RCI) | 1.42% |
| On all remaining RCI | | (Over $5,000,000 RCI) | | | 1.25% |

For purposes of computing fees, the start of each year shall be the anniversary of the Opening Date.

**GMAC REAL ESTATE, LLC**

By: _____

Title: Senior Vice President

Date: January 30, 2001

Waterfront Realty Group, Inc.
[Name of Member]

By: _____
(Signature of owner, partner or officer)

Title: CEO

Date: 3/27/01

(page 2 of 2)

## ADVERTISING AMENDMENT #1

## LOCAL ADVERTISING SUPPORT PROGRAM ("LASP") AMENDMENT

### For Certain Franchises Which Became Members Before May 1, 2000

The following Amendment to the Real Estate Service Contract is available to certain Members who have signed the Transaction Fee Amendment and Advertising & Sales Promotion Amendment (the "Amendment").

**Local Advertising.** GMAC Real Estate recognizes the need for Members to increase their local advertising exposure to effectively expand their market shares. Therefore, GMAC Real Estate offers to Member, upon the terms and subject to the conditions following, the Local Advertising Support Program.

1.    Only Members who are current in reports and financial obligations to GMAC Real Estate are eligible. For purposes of the LASP program only, current is defined as no fees, product billings, or other charges more than thirty (30) days past due  sixty (60) days past invoice date).

2.    Member will pay one hundred percent (100%) of the Advertising & Sales Promotion Fee based on Residential Commission Income due under Section 10.b. as amended by the Amendment. GMAC Real Estate will reimburse Member on a partial matching basis ($1.00 for each $2.00 spent) for amounts Member spends on qualified local advertising up to the amount of the Member's annual LASP Budget.

3.    The annual LASP Budget will be twenty-five percent (25%) of the total Advertising & Sales Promotion Fees paid by Member during the prior accounting period.

4.    Member must present advertising plans for prior approval by GMAC Real Estate so that GMAC Real Estate can determine whether such advertising qualifies for the LASP program.

5.    The annual LASP Budget will run for two consecutive six-month periods (January 1 to June 30 and July 1 to December 31). Six-month LASP budgets will be calculated each January and July on Members actual transaction reports filed and Advertising & Sales Promotion Fees paid for the periods May 1 to October 31 and November 1 to April 30 of the previous accounting period. A credit of one-sixth (1/6) of the semi-annual LASP Budget will be allowed for each month the Member's financial obligations were current with GMAC Real Estate during that period. There will be no carryover of LASP account dollars from one year to the next.

6.    In the event this Contract is terminated for any reason, Member agrees to reimburse GMAC Real Estate for funds applied to LASP, to the extent the funds exceed the Advertising & Sales Promotion Fees paid in the current calendar year, plus interest.

7.     Member will receive a monthly statement from GMAC Real Estate showing Member's LASP expenditures and balance.

8.     GMAC Real Estate reserves the right to modify or discontinue LASP at its option upon sixty (60) days' notice to Member prior to January 1 of any year.


**GMAC REAL ESTATE, LLC**

By: _____

Title: ___Senior Vice President___

Date: ___January 30, 2001___


Waterfront Realty Group, Inc.
_____
[Name of Member]

By _____
(Signature of owner, partner or officer)

Title: ___CEO___

Date: ___3/27/01___


(page 2 of 2)

# Contract Amendment

As of this 30th day of January, 2001, *GMAC* Real Estate, LLC, d/b/a *GMAC* Real Estate ("*GMACRE*"), having a place of business at 477 Martinsville Road, Liberty Corner, New Jersey 07938, and **Waterfront Realty Group, Inc.** ("**Member**"), parties to a Service Contract (the "**Contract**"), dated effective, January 1, 2001, agree as follows:

**1.    Transition Assistance.**    *GMACRE* will provide materials and funds for Member to convert its identity to *GMAC Real Estate* from *Better Homes and Gardens*, provided Member:

    **a.**    is current on all financial obligations to *GMACRE*.

    **b.**    executes a note (the "**Conversion Costs Note**") for the amount indicated below, in the form attached.

    **c.**    orders products from approved suppliers and vendors.

**2.    Amount of Assistance.**    The amount of assistance which *GMACRE* is prepared to offer is prescribed by guidelines related to the size and style of exterior office signage, quantity of active residential property listings and the number of real estate sales professionals associated with Member. Based on these factors, *GMACRE* will assist Member in an amount up to **$8,606.35** for the purchase by Member of identity materials bearing the *GMAC Real Estate* trademark.

    **a.**    Member shall submit invoices to *GMACRE* by April 30, 2001, for reimbursement from the transition funds.

    **b.**    Any unused funds after that date will be forfeited.

**3.    Forgiveness of Indebtedness.**    Repayment of the amount of the assistance will be waived, in whole or in part, as provided in the Conversion Costs Note.

**4.    Term of the Contract.**    The provisions of Section 27 of the Contract notwithstanding, the parties agree that the term of the Contract shall be extended to March 1, 2006.

IN WITNESS WHEREOF, the parties execute this Contract Amendment, intending it to be effective as of January 1, 2001.

**GMAC Real Estate, LLC**    Waterfront Realty Group, Inc.

By _____    By _____
                                                    Jack Newby

Date:    January 30, 2001    Date: 3/27/01

CONVERSION COSTS NOTE

**$8,606.35**                                                     **March 1, 2001**

**For Value Received** Waterfront Realty Group, Inc. ("**Member**"), a Florida corporation, hereby promises to pay to the order of GMAC Real Estate, LLC ("*GMACRE*"), at its office at 477 Martinsville Road, Liberty Corner, NJ 07938, or at such other place as the holder of this Note may from time to time direct, the principal sum of Eight Thousand Six Hundred Six Dollars and Thirty-Five Cents ($8,606.35), plus an amount equal to all sales tax and shipping charges for conversion materials forwarded by *GMACRE*, (together, the "**Principal Loan Amount**"), together with interest thereon, as follows:

(a)     principal and interest payments (interest payments being at the Interest Rate, as defined below), each being in an amount equal to: (a) 1/60th of the Principal Loan Amount, as to principal, and (b) all accumulated interest, on the 1st day of each month following the date of this Note and on the 1st day of each month thereafter, for a total of 60 months, with all outstanding principal and interest being payable, in full, on the 1st day of the 60th month (the "Termination Date") following the date of this Note.

**Interest Rate.** The Interest Rate, as to each monthly interest payment, shall be the interest rate published in the Wall Street Journal (the "**WSJ**") on the 1st business day of each such month, as the prime or base lending rate (if such interest rate is not published in the WSJ, the Interest Rate shall be the average prime or base lending rate, as of that date, being offered by the three largest United States banks), plus 2%.

**Principal Reductions.** Notwithstanding any other provision of this Note, so long as an Event of Default (as defined below) has not occurred, the Member shall not be required to pay to *GMACRE* the monthly amounts of principal and interest set forth above, and the principal and interest due on this Note shall be deemed reduced by an amount equal to each such monthly principal and interest payment, which is not required to be made.

**Events of Default.** An event of default (an "**Event of Default**") under this Note shall include, but not be limited to: **(a)** a default by the Member under the Service Contract (including any amendments to the Service Contract) (together, the "**Contract**") entered into between Member and *GMACRE*, effective January 1, 2001; **(b)** the termination, for whatever reason, of the Contract; **(c)** a default by Member in the payment of any amount due under this Note or any other document between the Member and *GMACRE*; **(d)** the entry of a judgment against the Member in excess of $50,000, which is not discharged within 30 days or is not fully covered by insurance; **(e)** the institution of bankruptcy or similar proceedings by or against the Member, which are not dismissed within 45 days. Upon the occurrence of an Event of Default, all amounts unpaid under this Note shall immediately become due and payable.

**Member's Waiver.** The Member waives presentment, demand and protest and notice of presentment, protest, default, non-payment or maturity.

**Jurisdiction; Waiver of Jury Trial.** All litigation with respect to this Note or with respect to actions taken pursuant to this Note shall be conducted in the courts located in the State of New Jersey. The Member irrevocably waives all right to trial by jury in any such litigation.

The Member:

Waterfront Realty Group, Inc.

By

08CV5043
JUDGE GUZMAN
MAGISTRATE JUDGE ASHMAN

**GMAC** Home Services

CEM                                    March 23, 2005

**VIA FEDERAL EXPRESS**

Waterfront Realty Group, Inc.
d/b/a Waterfront Realty Group, Inc.  GMAC Real Estate
2026 N. Tamiami Trail
Naples, FL  34102

Attn: Jack Newby
      Rick Newby
      Thomas Ouverson

        Re:    Notice of Default
               Real Estate Service Contract
               Effective January 1, 2001

Dear Messers. Newby and Ouverson:

        This letter shall serve as formal notice of default pursuant to Section 17 of the January 1, 2001 Real Estate Service Contract between Waterfront Realty Group, Inc. and GMAC Real Estate, LLC ("GRE").

        This default results from failure by Waterfront Realty Group, Inc. to (a) pay all amounts currently past due to GRE in the amount of $94,131.91 and (b) submit the reports required by Section 11 for the period from January 2005 to February 2005. The transaction and advertising fees include an estimated amount ($35,802.00) for the months in which the reports referenced above were not filed. We will be able to determine the final figure only once the appropriate reports have been submitted.

        If these defaults are not cured within 30 days of the date of your receipt of this letter, GRE reserves the right to pursue further action including suspension of referrals, removal or your company from the authorized referral directory, removal of your company from any GMAC Real Estate websites, filing suit to recover the fees and other charges now outstanding, and/or terminating the Franchise Agreement and pursuing money damages for the balance of the term.

        Additionally, on the basis of these defaults, GRE currently has the right to immediately accelerate all principal and interest amounts unpaid under the Conversion Costs Note, and GRE will have no choice but to exercise that right if the defaults are not cured as set forth above.

                                    Very truly yours,

                                    Jeff Vail
                                    Vice President
                                    GHS Financial Services
                                    (630)214-1629

**EXHIBIT**
2

## GMAC Home Services

REAL ESTATE • MORTGAGE • RELOCATION

08CV5043
JUDGE GUZMAN
MAGISTRATE JUDGE ASHMAN

CEM

October 5, 2005

**VIA FEDERAL EXPRESS**

Waterfront Realty Group, Inc.
d/b/a Waterfront Realty Group GMAC Real Estate
2026 N. Tamiami Trail
Naples, FL  34102

Attn:   Jack Newby
        Rick Newby
        Thomas Ouverson

Re:     Notice of Termination
        Real Estate Service Contract
        Effective January 1, 2001

Gentlemen:

  I am in-house counsel for GMAC Home Services, Inc., and its subsidiaries, including GMAC Real Estate, LLC ("GRE"), and I am writing to provide formal notice of termination with respect to the January 1, 2001 Real Estate Service Contract between Waterfront Realty Group, Inc. and GRE.

  Waterfront was provided with a notice of monetary and non-reporting defaults dated March 23, 2005, and Waterfront failed to cure either default within the requisite 30 days, or at any time thereafter. GRE tried in every way to assist Waterfront in resolving this dispute, but without success and without any apparent reciprocal desire by Waterfront to reach some accommodation. As a result, the Franchise Agreement is terminated effective as of the date of this letter.

  Within 10 days of termination, Waterfront must cease the use of the GMAC Real Estate name, corporate brand logos, the associated House and Trees pictorial depiction (collectively, the "marks"), or any phrases or images confusingly similar to the marks. This prohibition extends to all

PREMIER SERVICE®

GMAC Home Services  •  150 Mount Bethel Road  •  Warren, NJ 07059
(908) 542-5400  fax (908) 542-5526


EXHIBIT
3

**GMAC Home Services**

REAL ESTATE • MORTGAGE • RELOCATION

Waterfront Realty Group, Inc.
October 5, 2005
Page 2

use of the marks in signage, advertising, yellow page directories, on-line telephone directories, trade directories, business cards, stationary, e-mail addresses, and/or URL addresses. Advertising encompasses any type of promotional activity, regardless of format, such as print, radio, television, cold-calling or Internet.

Waterfront remains liable for the following: the outstanding unamortized balance of $3,111.61 on the Conversion Costs Note, $62,029.73 in outstanding fees and $161,109.00 in estimated outstanding fees for the period of non-payment and non-reporting from January 2005 to September 2005. Waterfront is obligated to remit additional fees based on any closings occurring on or prior to the termination date, any closings occurring after the termination date attributable to listings obtained on or prior to the termination date, and any referrals sent or received on or before the termination date. (GRE reserves the right to conduct a post-termination audit as permitted under Section 13 of the Franchise Agreement). Finally, by virtue of the termination of the franchise, GRE has been deprived of a future stream of anticipated revenue for the remaining term of the Franchise Agreement, in the estimated amount of $90,016. The total amount thus owed to GRE is $316,266.34.

In the event the total amount due is not paid to GRE within 30 days of the termination date, or if Waterfront otherwise fails to comply with its post-termination obligations, GRE will have no choice but to consider legal action, and thereafter seek to recover attorneys' fees and costs of suit in accordance with Section 18(e) of the Franchise Agreement.

Very truly yours,

*Richard D. Ballot*

Richard D. Ballot
Associate Counsel

cc: Gloria Newman
John Sandala
Jenny Archer
Jennifer Paluch
Susan Daniel
Lane Kehler
Mike Powers
Gregory N. Woods, Esq. (via facsimile (239) 593-2990)

PREMIER SERVICE

GMAC Home Services • 150 Mount Bethel Road • Warren, NJ 07059
(908) 542-5400 fax (908) 542-5526